**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JUAN DAVILA-BAJANA,           )<br>                    Plaintiff,       )<br>                                              )<br>       v.                                   )<br>                                              )<br>TIM HOLOHAN, et al.,              )<br>                    Defendants.  ) | C.A. No. 06-197 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S**

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is  respectfully recommended that Defendants' motion to dismiss or in the alternative for summary judgment [Document # 14] be granted.

By separate text Order filed this day, Plaintiff's motion for preliminary injunction and funds for expert witness [Document # 21] are dismissed as moot in light of the recommendations made herein.

**II.    REPORT**

     **A.     Relevant Procedural and Factual History**

On September 1, 2006, Plaintiff Juan Davila-Bajana, a federal inmate currently incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* action, raising a civil rights claim pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), as well as the Federal Tort Claims Act.  Named as Defendants in the original complaint are: James Sherman, Warden; Rodney Smith, Health Services Administrator; Dennis Olson, Medical Director, all formerly or currently of FCI-McKean; Scott Dodrill, Regional Director of the Northeast Regional Office of the Bureau of Prisons; Harrell Watts, Administrator of the Office of General Counsel of the Bureau of Prisons; and the United States

of America.

In his original complaint, Plaintiff raises three separate claims. First, Plaintiff alleges that Defendants violated his right under the Eighth Amendment to be free from cruel and unusual punishment by mistreating his hammertoe condition. Second, Plaintiff raises a First Amendment claim alleging that Defendants subjected him to retaliation for exercising his right to access the administrative remedies process. Finally, Plaintiff alleges that the United States should be liable to him under the Federal Tort Claims Act as it was negligent in the training of its employees.

Defendants have filed a motion to dismiss or in the alternative for summary judgment. [Document # 14] and Plaintiff has filed an Opposition Brief [Document # 19]. Additionally, Plaintiff has filed a "Consolidated Motion for ... Preliminary Injunction and Request for Expert Witness." Document # 21.

The issues are fully briefed and are ripe for disposition by this Court.

**B.    Standards of Review**

**1.    *Pro se* Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d

63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.


### 2.    Motion to Dismiss - Fed.R.Civ.P. 12(b)(1)

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction which attacks the  as deficient on its face, the Court must take all allegations in the complaints as true.  Mortensen v. First Federal Sav. and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).  However, when the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact.  Id. at 891.  See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J. 2000).


### 3.    Motion to dismiss - Fed.R.Civ.P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief.  The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim.  Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974).  However, a court need not credit a

complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

### 4. Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a

genuine issue for trial.  Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions."  Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### C.    Plaintiff's Relevant Medical History

The medical record reflects that on October 25, 2003, Plaintiff injured his left second toe while playing handball within the prison.  Document # 15-6, Declaration of Dennis Olson, ¶ 3a, with supporting medical records.  Plaintiff sought medical attention on October 30, 2003 and after an x-ray of the affected area was diagnosed with a strain/sprain.  Id.  Plaintiff's condition was later listed as "hammertoe" (defined as a toe that is "curled due to a bend in the middle joint of the toe").

From October of 2003 through February of 2004, Plaintiff's complaints about his toe were addressed by Bureau of Prisons medical staff on numerous occasions.  Plaintiff's toe was taped, he received anti-inflammatory medications; he was issued gel pads and band-aids; he was

given a "sneaker pass"; and he was continuously examined by medical staff.  See Document # 15-6, Declaration of Dennis Olson, pages 1-12 summarizing Plaintiff's medical records; Document # 15-7, Plaintiff's medical records, pages 1-46; and Document # 15-8, additional medical records, pages 1-42.

On February 11, 2004, Plaintiff was referred to an orthopedic surgeon for a consultation. Id. at ¶3j, and page 49.  The surgeon diagnosed Plaintiff with a hammertoe deformity of the second left toe.  Id. at ¶3l, and page 49.  The surgeon gave Plaintiff a cortisone injection and recommended surgical correction if the deformity persisted.  Id.

Thereafter, Plaintiff's complaints continued on a monthly basis and he was repeatedly seen and assessed by Bureau of Prisons medical personnel.  Id. at ¶¶3m-t.  Plaintiff continued to demand surgical intervention.

On September 3, 2004, Plaintiff was taken to a second orthopedic consult with a different orthopedic surgeon.  Id. at ¶3v.  This second surgeon diagnosed Plaintiff with hammertoe, as well as Morton's foot (an inflamed nerve in the ball of the foot), a long second toe, and osteoarthritis in the big toe.  Id.  The surgeon recommended a longer shoe with a metatarsal bar placed on the bottom of the shoe to relieve pain.  Id.  The surgeon specifically noted that this shoe approach would be "a lot easier than doing surgery."  Id.

Plaintiff was issued two metatarsal bars and instructions as to their use.  Id. at ¶3aa.  In the medical records, Dr. Olsen concluded that these non-surgical accommodations represented a conservative treatment plan that adequately addressed Plaintiff's medical issues and that there "is no clinical indication that corrective foot surgery is medically necessary."  Id.

### D.     The Eighth Amendment Claim
#### 1.     Against Defendants Sherman, Dodrill and Watts

Defendants argue that Defendants Sherman, Dodrill and Watts should be dismissed for failure to state a claim as they had no personal involvement with Plaintiff's medical treatment.

When a supervisory official is sued in a civil rights action, liability can only be imposed

if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

As Plaintiff has not alleged any affirmative action on the part of Defendants Sherman, Dodrill and Watts, these Defendants should be dismissed for failure to state a claim. Defendants' motion to dismiss should be granted in this regard.

### 2. Against Defendants Dr. Olsen and Health Services Administrator Smith

Next, Defendants move for summary judgment because Plaintiff has failed to state a claim under the Eighth Amendment upon which relief may be granted.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id. Defendants do not dispute that Plaintiff's conditions of hammertoe and osteoarthritis constitute a "serious medical need" under this framework. See Document # 15, page 18.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Defendants have provided evidence in support of their argument for summary judgment. The medical records, along with the sworn explanations provided by Defendants, reflect that prison officials were not deliberate indifferent toward Plaintiff.

Plaintiff does not allege that he received no medical treatment - he only alleges that the conservative course of his treatment violates his Eighth Amendment rights. The medical records demonstrate that Plaintiff was seen numerous times by prison medical staff, as well as

8

two different orthopedic surgeons and his continuing complaints were treated. It is the course of treatment to which Plaintiff objects and such does not rise to the level of a constitutional violation. Therefore, Defendants were not deliberately indifferent and summary judgment should be granted in favor of Defendants Olson and Smith on this claim.

      E.      **The Retaliation Claim**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).[1]

In his Opposition Brief, Plaintiff explicitly withdraws this claim. See Document # 19, page 11-12 ("Plaintiff must generally acquiesce to the fact that he has not exhausted such a

---

[1] In order to state a *prima facie* case of retaliation, a prisoner must demonstrate:

    1) the conduct in which he was engaged was constitutionally protected;
    2) he suffered "adverse action" at the hands of prison officials; and
    3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). See also Davis v. Pennsylvania State, 2007 WL 2128342 (3d Cir. July 26, 2007). Following the satisfaction of a *prima facie* case of retaliation by a plaintiff, the burden then shifts to defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

claim as retaliation. And actually he must admit that the even mentioning of same, even though just in his preamble, was somewhat premature. This is so as he never, as noted by the Defendants, raised and exhausted such a claim. ... Plaintiff will agree that this claim, to the extent that it could be considered raised, is withdrawn.").

### F.	The FTCA Claim

Next, Defendants argue that the FTCA claim should be dismissed as Plaintiff has not adequately exhausted his administrative remedies pursuant to the statute.

The FTCA grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment. See 28 U.S.C. § 2675(a). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674. The FTCA specifically requires an initial presentation of the claim to the appropriate federal agency and a final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit. See Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995). This requirement is set forth in 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Thus, presentation of an administrative claim in accordance with 28 U.S.C. § 2675(a) is "a jurisdictional requirement and an absolute prerequisite to maintaining a civil action against the government under the FTCA." Valenzuela v. Thrifty Rent-A-Car, 1995 WL 708109, at *3 (E.D.Pa. Nov. 20, 1995). See also McNeil v. United States, 508 U.S. 106 (1993)(FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies). An administrative claim is deemed "presented" when the federal agency receives

written notification of the alleged injuries accompanied by a claim for money damages set forth in a sum certain. 28 U.S.C. § 14.2; see also Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971).

In his complaint, Plaintiff makes the following allegations as to the FTCA claim:

> The Defendant United States has a duty to promulgate Policy for the interaction between its personnel and the clients of its agencies. As such, the Bureau of Prisons [to wit, United States] has enacted the Code of Federal Regulations and Program Statements to set forth with specifics, the manner in which its employees of the Bureau of Prisons are to handle the day to day care and custody of the prisoners entrusted to the Bureau of Prisons' care.
>
> In furtherance of this the Bureau of Prisons also has policy for the training of its employees so that they are familiar with its policy, rules and regulations. They are also trained in the implementation of the policy so that they can not only recognize the policy and its objectives; but are able to make efforts in the realization of said objectives. Notwithstanding this, the employees also receive annual and other scheduled training to ensure that they are familiar with any changes in the policy and/or interpretations and/or implementation, i.e., if the courts should make a determination that a policy cannot, or should be, implemented in a certain fashion – the Bureau of Prisons would schedule training to address the change in the ruling.
>
> As such, the United States is negligent in not assuring that its employees have implemented its policy and provided Plaintiff with adequate medical care. The manner in which it, to wit, its employees, implement its policy is directly attributal [sic] to it. In arguendo, its training of its employees, if deficient, is also a negligent failure of the United States.

Document # 3, ¶¶ 29-31.

Defendants argue that Plaintiff has not properly exhausted his claim of negligent implementation of policy and/or negligent failure to train staff. According to evidence supplied by Defendants, Plaintiff did file an administrative tort claim. However, that claim was limited solely to the medical malpractice related to the treatment of his hammertoe condition and did not set out a negligent implementation of policy and/or negligent failure to train staff claim. A review of the administrative tort claim[2] reveals that Defendants are correct in this regard, to wit,

---

[2] In his administrative tort claim dated 10/28/2005 (stating the date of the accident as "a continuing problem accurred on 9/17/04"), Plaintiff complains:

> This claim is being submitted in regards to the medical negligence and malpractice of medical personnel at FCI McKean in regards to the treatment

11

the administrative tort claim Plaintiff filed is not the same as the claim he seeks to prosecute in this civil action.  See Livera v. First Nat. State Bank, 879 F.2d 1186, 1194 (3d Cir. 1989)(Exhaustion of administrative remedies is a jurisdictional requirement that cannot be waived and must be strictly construed in favor of the United States).  Plaintiff has not administratively exhausted the issue he presently brings before this Court as he is statutorily required to do.  Accordingly, the motion to dismiss for lack of jurisdiction should be granted.[3]

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss or in the alternative for summary judgment [Document # 14] be granted.

By separate text Order filed this day, Plaintiff's motion for preliminary injunction and funds for expert witness [Document # 21] are dismissed as moot in light of the recommendations made herein.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the

---

regarding hammertoe and osteoarthritis.  During the diagnostic stages I was initially seen by a orthopedic surgeon who recommended surgery.  Apparently unhappy with that diagnosis, medical staff referred me to another orthopedic surgeon, who decided, somewhat arbitrarily, that I no longer needed surgery.  I was told that the situation would be correct by usage of a metatarsal bar at the bottom.  This person also advised me to live with and manage the pain.  The condition is progressively worsening, and all pleas to have the matter fixed have fallen on deaf ears.  The condition clinically calls for corrective surgery.  Without the surgery, my daily life activities are severally [sic] limited.  Medical services are negligent to the point of malpractice for failing to provide this operation.

Document # 15-5, pages 2-3.

[3] In any event, this claim is beyond the subject matter jurisdiction of this Court due to the discretionary function exception to the FTCA.  See 28 U.S.C. § 2680 (a) (1988); Berkovitz v. United States, 486 U.S. 531 (1988); United States v. Gaubert, 499 U.S. 315 (1991).

date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of appellate rights. <u>See</u> <u>Nara v. Frank</u>, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 08, 2007).

        <u>Susan Paradise Baxter</u>
        SUSAN PARADISE BAXTER
        Chief United States Magistrate Judge

Dated:  August 20, 2007